UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRADLEY COLEMAN,

    Plaintiff,

    v.

CARSON, BYRUM

    Defendants.

Case No. 3:19-CV-102 JD

## OPINION AND ORDER

This is an Eighth Amendment case by a prisoner alleging that guards allowed him to be attacked by other inmates. Plaintiff Bradley Coleman was incarcerated at the Miami Correctional Facility ("Miami") in December 2017 when he was involved in a fight with other inmates and spent three days in the infirmary. He filed this suit against two prison officials, alleging that they were deliberately indifferent to a known danger he faced, particularly an attack by other inmates when they denied his requests for protective custody, in violation of his Eighth Amendment right to be free of cruel and unusual punishment. In the alternative, Mr. Coleman also alleged that the defendants were negligent in failing to protect him. Defendant Lieutenant Robin Byrum moved for summary judgment. The Court addresses that motion and also addresses the case as it pertains to Defendant Sara Carson.

### I. FACTUAL BACKGROUND

On December 24, 2017, a month after being transferred from New Castle Correctional Facility ("New Castle") to Miami, Mr. Coleman started a fight with another inmate because he thought he was going to be attacked. As a result of this fight, Mr. Coleman was briefly unconscious, needed several stiches, and spent three days in the infirmary. Upon arriving at

Miami and prior to the fight, Mr. Coleman told an unnamed correctional officer that he needed protective custody. That correctional officer explained that Miami did not have protective custody however, Mr. Coleman was moved from A-Dorm to L-Dorm on December 1, 2017. After he was moved to L-Dorm, he spoke to a counselor conveying the same concern and was told to read his orientation packet and to see a correctional officer if necessary since nothing had been done to him yet nor had he been threatened in his current dorm. Prior to the incident on December 24, Mr. Coleman asserts that after being ignored by Officer Carson, he "caught [Lt. Byrum] in the hallway" and told her his "situation" and requested protective custody. Mr. Coleman described his "situation" as still being the "subject of a gang hit". [DE 51-1 at 5]. He explains that he "went into detail about the state wide [sic] gang hit" and why he needed protective custody. Lt. Byrum told him that Miami does not have a protective custody unit, but she would "pass it on." A week or so after this conversation, the December 24 fight occurred. On March 22, 2018, three months after the fight, Mr. Coleman made his first documented request for protective custody at Miami which was denied for lack of information and proof. [DE 41-4; 41-6]. Although protective custody was denied, Mr. Coleman was placed in Miami's segregation unit on March 23, 2018. [DE 41-6]. Mr. Coleman submitted both a request for protection and an Offender Grievance in April 2018. [DE 41-7; 48-5]. Mr. Coleman filed a Notice of Tort Claim on August 23, 2018, which was denied on November 7, 2018. [DE 41-5; 41-6; 48-1 at 5–8].

On February 18, 2019, Mr. Coleman filed this lawsuit alleging deliberate indifference and negligence against Lt. Byrum and Officer Carson. Lt. Byrum filed a motion for summary judgment [DE 41], which is fully briefed by the parties and ripe for decision. [DE 48, 51, 53]. For the reasons stated below, the Court grants the motion for summary judgment in favor of Lt. Byrum.

2

## II. STANDARD OF REVIEW

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

## III. DISCUSSION

Mr. Coleman alleges Lt. Byrum was deliberately indifferent to a known danger that he faced of an impending attack by other inmates, in violation of his federally protected rights under the Eighth Amendment and 42 U.S.C. § 1983. Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, but guards can be held personally responsible for an attack only if they are deliberately indifferent to the danger. *Farmer v. Brennan*, 511 U.S. 825, 832–34 (1994). That requires showing that the guards knew of and disregarded an excessive risk to inmate safety. *Id.* at 837. But, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson*, 538 F.3d at 777. Therefore, a failure-to-protect claim cannot be

3

predicated "merely on knowledge of general risks of violence in [a detention facility]." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005) (quotations omitted). And, "the fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Instead, the plaintiff must establish "the defendant[] had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high bar. To establish deliberate indifference on the part of a defendant sued individually, a plaintiff must show "that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [the plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

Lt. Byrum argues that even when viewed in a light most favorable to Mr. Coleman, the facts do not demonstrate she was deliberately indifferent. The Court agrees. The question here is whether Lt. Byrum was aware of a serious risk of harm faced by Mr. Coleman and failed to take reasonable steps to protect him from that harm. Without knowledge of a specific and credible threat, Lt. Byrum cannot be deemed deliberately indifferent to Mr. Coleman's safety by refusing to place him in protective custody prior to December 24, 2017. *Lewis,* 107 F.3d at 553; *Gevas v. McLaughlin*, 798 F.3d 475, 81 (7th Cir. 2015) ("[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk."). Lt. Byrum denies that Mr. Coleman ever told her of a threat against him, however, she argues that even if accepting the facts presented by Mr. Coleman as true, summary judgment

is appropriate because he has not alleged, or provided any evidence to suggest, that he provided Lt. Byrum with any specifics or proof that he was actually in danger. *See, e.g.*, *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("[The prisoner's] vague statements that inmates were 'pressuring' him and 'asking questions' were simply inadequate to alert the officers to the fact that there was a true threat at play."); *Klebanowski*, 540 F.3d at 639–40 (beyond expressing fear for his life, prisoner's statements to guards did not identify who was threatening him or what the threats were); *Grieveson*, 538 F.3d at 776 (prisoner did not mention to guards that he was perceived to be a "snitch" or otherwise apprise them of a specific threat to his life); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (prisoner only stated vaguely that he was "having problems" in his cellblock and "needed to be removed").

  Mr. Coleman submitted his own affidavit stating that he told Lt. Byrum "for three days" that he had a statewide gang hit on him, was going to be stabbed, and needed to be removed from general population. [DE 51-1 at 6]. However, the affidavit also refers to both the Notice of Tort Claim and the Complaint as being "true and accurate and based on [his] knowledge" and those only state that he spoke to Lt. Byrum once in the hallway prior to December 24. [DE 1 at 2; 41-5]. All other recitations of the events submitted as evidence state this as well. He further attests that when he spoke with Lt. Byrum he went into "detail about the state wide [sic] gang hit on [him] and why [he] needed protective custody" and that he had previously been denied protective custody four times at his previous facility. [DE 51-1 at 5–6]. Those statements are the only evidence in the record that can assist Mr. Coleman in his attempt to show that Lt. Byrum was aware of any risk to him. However, while Mr. Coleman affirms that he told Lt. Byrum about the statewide gang hit in "detail," he does not provide the Court with any of this "detail" allegedly communicated to her. The only specifics provided to the Court regarding this statewide hit

5

comes from Mr. Coleman's written request for protection *four months after* the relevant attack. [DE 41-7]. Additionally, Mr. Coleman asserts his cellmate told him the inmates "trying to hurt him" were going to do something to him on December 24. [DE 51-1 at 5]. However, Mr. Coleman does not claim to have told Lt. Byrum, or any other correctional officer, this information and therefore, that detail cannot be imposed onto Lt. Byrum.

Further, Mr. Coleman has not established that he told Lt. Byrum which gang had a hit on him and why he believed this threat existed. In his request for protection on April 10, 2018, he provided detail regarding which gang he believed to have a statewide hit on him and why, including names and detailed interactions. Yet, again, none of these facts are alleged or argued to have been given to Lt. Byrum, nor does the Court expect Mr. Coleman to have given that specificity as he only talked to her in passing in the hallway. *See Sommerfield v. City of Chi.*, 863 F.3d 645, 649 (7th Cir. 2017) ("[C]onclusory statements not grounded in specific facts" are not enough to avoid summary judgment.); *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (Summary judgment is the "put up or shut up" moment in a lawsuit.). Mr. Coleman argues that a plaintiff may establish deliberate indifference in circumstances where the specific identity of the ultimate assailant is not known in advance of the assault, citing *Sinn v. Lemmon*, 911 F.3d 412 (7th Cir. 2018). However, the facts of *Sinn* are distinguishable from those here. Mr. Coleman did not just omit the ultimate known assailant to Lt. Byrum, but based on the facts presented to the Court, he failed to even identify the gang that had a hit on him. In *Sinn*, the plaintiff presented evidence that the defendant was aware of general patterns of gang violence, had independent knowledge of a previous gang-member attack on the plaintiff, and wrote the defendant a letter explaining the basis for his fear of attack. 911 F.3d at 420–21. Thus, the Seventh Circuit held

that it was reasonable to infer that the defendant knew about a specific risk the plaintiff faced of a particular gang attacking him. *Id.* Mr. Coleman has not presented similar evidence.

Additionally, the fact that Mr. Coleman requested protective custody while at New Castle, prior to being transferred to Miami, and denied on four occasions, is irrelevant to his claim that Lt. Byrum was deliberately indifferent to his risk of serious harm at Miami. Based on Mr. Coleman's recitation of the facts, he had only sought protective custody from Lt. Byrum on one occasion, in passing, just days before the fight. While Mr. Coleman told Lt. Byrum of these instances at New Castle, he did not give any details of why these requests were denied, specify any issues at New Castle that actually occurred, or why they had any bearing on his safety at Miami.

Without these additional facts to rely on, there was nothing to lead Lt. Byrum to believe that this threat was credible or that Mr. Coleman was not merely speculating. *Klebanowski*, 540 F.3d at 640. Mr. Coleman's vague description made in passing is insufficient to place Lt. Byrum on notice of any substantial risk of serious harm before December 24, 2017. And none of Mr. Coleman's assertions show that Lt. Byrum is personally responsible for the attack against him. Guards are deliberately indifferent only when they "effectively condone[] the attack by allowing it to happen." *Santiago*, 599 F.3d at 756 (quoting *Lewis*, 107 F.3d at 553). Without knowing more specific information regarding the risk of serious harm that Mr. Coleman faced, Lt. Byrum cannot not be liable.

In addition to the vague description of the threat against him, Mr. Coleman has not attempted to establish that the individuals involved in the "attack" on December 24 were in fact affiliated with the gang he believed had put a hit on him and that Lt. Byrum knew of their gang affiliation. *See Lewis*, 107 F.3d at 554 ("Moreover, to survive summary judgment Lewis must

present some evidence, beyond the bare allegations of his complaint, not only that the inmates who assaulted him on June 3 were members of the Disciples, but also that the defendants were aware of their gang affiliation."). In *Lewis*, the Seventh Circuit found the plaintiff failed to establish the inmates who assaulted him were members of the gang he sought protection from or that the defendants knew of those inmates' gang affiliation. The same is true here. In Mr. Coleman's April 2018 request for protection, although he provides the details of the threat against him, he does not state the gang affiliation of the inmates he fought with on December 24, nor did he clarify if they were in fact members of the same gang that had put this hit on him. Mr. Coleman has not presented evidence indicating that Lt. Byrum knew, before the December 24 fight, that the inmate who he fought belonged to the gang that had a hit on him—or even that there were other inmates in the dormitory known to prison officials as members of that gang who might pose a threat to Mr. Coleman. As a result, even when viewing the record in the light most favorable to Mr. Coleman, he has failed to convince the Court that Lt. Byrum was deliberately indifferent to a known serious risk of harm.

      The Court further notes that the video evidence does little to help Mr. Coleman's claim of deliberate indifference. Mr. Coleman submitted Exhibit D with his motion, which includes two videos. The first video is labeled "EXHIBIT D **(L1-2 Dayroom** 2011224)" and the second video is labeled "EXHIBIT D (**L- House 3/4 Dayroom Front**_20171224"). [DE 50] (emphasis added). Based on its own independent review of the video evidence, the Court concludes that, while these videos are from the same day, and around the same time, they show two different fights in two different dayrooms in L-Dorm. Based on Mr. Coleman's evidence, on December 1, 2017 he was moved to "L-Dorm 3/4 Side," [DE 48-2 at 1]. Accordingly, it would appear that the second video shows the inmate fight that Mr. Coleman participated in and is factually relevant here. This

is also supported by the fact that at time stamp 7:56:01 of the second video, Mr. Coleman can be seen unconscious on the floor, moments after he started the fight, which is consistent with the descriptions of the fight in the evidence. It is not apparent to the Court why or how the first video, in L-Dorm 1/2 dayroom, is relevant to this case. Nor does Mr. Coleman attempt to explain its relevance.

In the second video, at time stamp 7:55:48, Mr. Coleman can be seen walking through a group of inmates and continues to walk through the tables towards the other side of the dayroom. As he is walking, he approaches another inmate who is walking toward the side of the dayroom from where Mr. Coleman was coming. Contrary to Mr. Coleman's description of the fight, the hands of this inmate can be seen by his side as he is walking, not reaching for a weapon. The moment Mr. Coleman crosses paths with this inmate, Mr. Coleman punches the inmate, and a fight ensues. Seconds later, Mr. Coleman is unconscious on the floor and a group of inmates continue to fight without Mr. Coleman's participation. Mr. Coleman admits to starting the fight, however, rationalizes doing so because he "believed [he] was about to be beaten which is why the fight started in the dayroom." [DE 51-1 at 6]. Mr. Coleman describes the video in his affidavit:

> The video sho[ws] several offenders trying to get me into a cell to hurt or kill me. Before the fight starts the video, shows people trying to wait for the guard to leave to get me into the cell, but I walked away towards the dayroom. That's when I saw an inmate point to the area, I came from saying something and his other hand was reaching into his waist band to get a weapon, which is why I started swinging so I would not get hurt or killed.

*Id.* at 6–7. In considering this evidence, both the actual video and Mr. Coleman's description, in light most favorable to Mr. Coleman, the threat of serious harm at the time he started the fight is not corroborated. Although not determinative, the Court notes that Mr. Coleman did start this fight, seemingly after any possible imminent threat had subsided and Mr. Coleman was walking

away. *Compare Santiago*, 599 F.3d at 759 (determining that because it was the warden's responsibility to ensure that no fight ever took place, the identity of the inmate who threw the first punch was irrelevant), *with Clark v. Johnson*, 181 Fed. Appx. 606, 607 (7th Cir. 2006) (unpublished) (holding that "prison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner"). The facts of this case are more analogous with *Clark* than *Santiago*. In *Clark*, the plaintiff was denied transfer to a unit that houses inmates with significant mental-health issues and ultimately threw a book at his cellmate after a verbal exchange and in response his cellmate pulled him off the top bunk bed and broke his arm. 181 Fed. Appx. at 607. In *Santiago*, the district court dismissed parts of the plaintiff's complaint at the initial screening phase. 599 F.3d at 755–56. The plaintiff's allegation was that the warden was deliberately indifferent by permitting his employees to create, and by continuing through his own inaction, a situation that inevitably would lead to confrontation and violence. *Id.* at 759. The majority opinion held that the "[i]dentity of the first to throw a punch certainly does not negate the gravamen of [the plaintiff's] complaint that the warden was deliberately indifferent. It was the warden's job to ensure that no fight ever took place." *Id.* Here, jail officials did not house Mr. Coleman with a cellmate whom the officials knew to be violent. An inmate who walks away from a perceived threat and initiates a fight cannot properly maintain a claim that jail officials failed to protect him from the consequences of that fight. The *Santiago* Court did not rule otherwise. However, while the facts of this case are more aligned with *Clark*, and the Court finds that Mr. Coleman's risk of imminent harm was not substantial when he started the fight, summary judgment as a matter of law is independently warranted because he did not provide Lt. Byrum with the required specificity to make her actually aware of

a risk of serious harm, as discussed above. Accordingly, the Court grants Lt. Byrum's motion for summary judgment as to the deliberate indifference claim.

Furthermore, in his complaint, Mr. Coleman alleged that Lt. Byrum was negligent in failing to protect him from the fight with other inmates, which resulted in violations of his rights under the law of Indiana. [DE 1 at 3–4]. However, Mr. Coleman now concedes that he has no negligence claim against Lt. Byrum because the Indiana Tort Claims Act prohibits tort claims against individual employees and only allows tort claims against the employer-municipal entity, in this case the State, which was not named as a defendant in this action. [DE 51-1 at 10]. *See also* Ind. Code § 34-13-3-5(a), (b); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). Accordingly, based on this concession, and not for the reasons stated in Lt. Byrum's motion, the Court dismisses Mr. Coleman's negligence claim.

Finally, the Court notes that Mr. Coleman filed this case against another Defendant, Officer Sara Carson, however, this case has only proceeded against Lt. Byrum. Defendant Carson has not filed any appearance in this action, pro se or by counsel. Mr. Coleman has unsuccessfully attempted to serve Defendant Carson on three occasions [DE 7, 12, 22, 23, 26–28]. The last attempt of service was in August 2019. It appears from all of this that Mr. Coleman has abandoned any claim against Defendant Carson. Therefore, the Court will order Mr. Coleman to show cause why his claim against Defendant Carson should not be dismissed for want of prosecution. *See* Fed. R. Civ. P. 41(b).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, Defendant Lieutenant Robin Byrum's motion for summary judgment. [DE 41]. The Court DISMISSES Plaintiff Bradley Coleman's negligence claim. The clerk is DIRECTED to enter judgment in favor of Defendant Byrum. Additionally, Mr. Coleman is ORDERED to show cause, no later than 14 days after the issuance of this order, why the Court should not dismiss all claims against Defendant Carson for failure to prosecute.

SO ORDERED.

ENTERED: July 27, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court